

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED
12/20/2012**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| ROBERT VICTOR NUGENT | § | 11-38650-H4-7 |
| SUSAN M. EHRLER-NUGENT | § | (Chapter 7) |
| | § | |

| | | |
|---|---|---|
| SAMUEL WOODWARD | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY NO. 11-AP-03646 |
| | § | |
| SUSAN M. EHRLER-NUGENT | § | |
| | § | |
| DEFENDANT | § | |

## MEMORANDUM OPINION REGARDING COMPLAINT OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 523(a)(5)
[Adv. Doc. No. 1]

### I. INTRODUCTION

This dispute arises from a contested divorce between Samuel Woodward (the Plaintiff) and Susan M. Ehrler-Nugent, the defendant in this adversary proceeding and one of the debtors in the main Chapter 7 case (the Debtor). The state court issued a judgment that, among other things, awarded their marital homestead to the Debtor, but required her to keep paying the home loan as well as indemnify and hold harmless the Plaintiff for this obligation. The judgment also required the Debtor to pay the sum of $14,000 to the Plaintiff. The Debtor has defaulted under the home loan and has failed to pay the $14,000 to the Plaintiff. The home lender is now looking to the Plaintiff to pay the home loan.

1

With the Debtor in Chapter 7, the Plaintiff wants this Court to issue a declaratory judgment that the Debtor's obligations to him under the terms of the state court judgment are non-dischargeable. The Plaintiff takes the position that the Debtor's obligations to pay both the home loan and the $14,000 constitute "domestic support obligations" which are non-dischargeable under 11 U.S.C. § 523(a)(5). While the Debtor does not dispute that she owes these amounts, the Debtor takes the converse position, asserting that these obligations are *not* "domestic support obligations" that fall within § 523(5).[1] She contends that, if anything, they more likely fall under an alternate provision—§ 523(a)(15).[2] However, because the Plaintiff failed to timely plead for relief under this particular section, these obligations, according to the Debtor, are entirely dischargeable.

The Court issues this Memorandum Opinion to address an important issue that not infrequently arises when one ex-spouse files a bankruptcy petition; namely, what debts does the category known as "domestic support obligations" encompass?

## II. FINDINGS OF FACT

1. The Debtor was once married to the Plaintiff. [Plaintiff Ex. No. 1].

2. In 2007, the Debtor and the Plaintiff separated. At the time of this separation, the Debtor and the Plaintiff were residing in Gulf Shores, Alabama.

3. After the Debtor and the Plaintiff separated, the Plaintiff filed suit against the Debtor seeking a divorce. The suit was filed in the Circuit Court of Baldwin County, Alabama and was styled Samuel B. Woodward, Plaintiff v. Susan M.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

[2] The Debtor emphasizes that she does not concede that these obligations definitely fit within § 523(a)(15).

Ehrler Woodward, Defendant, Case No. DR-2007-900122.00 (the Divorce Lawsuit). [Plaintiff Ex. No. 1].

4.  The Circuit Court of Baldwin County, Alabama held a trial in the Divorce Lawsuit, and on July 30, 2008, the Alabama court issued a Final Judgment of Divorce (the Judgment). [Plaintiff Ex. No. 1].

5.  Neither the Debtor nor the Plaintiff appealed the Judgment, and it is now a final judgment. [*Id.*].

6.  Paragraph six of the Judgment reads as follows:

    > Except as set forth herein, the Defendant [i.e., the Debtor] is awarded all of the parties' right, title and interest in the marital home place, and the contents thereof, located at 78 Lagoon Drive, Gulf Shores, Alabama [the Lagoon Drive Property], and shall be responsible for the payment of any indebtedness thereon and shall indemnify and hold Plaintiff harmless therefore.

    [*Id.*].

7.  At the time the Judgment was issued, there was a lien on the Lagoon Drive Property: a home equity line of credit (the HELOC) which the Debtor and the Plaintiff had entered into on January 24, 2006. [Plaintiff Ex. No. 3]. The Judgment requires the Debtor to pay the balance owed under the HELOC, and also requires the Debtor to identify and hold the Plaintiff harmless for this HELOC balance (the HELOC Obligation).

8.  After the Judgment was issued, the Debtor did, in fact, make payments on the HELOC through November of 2010. [Adv. Doc. No. 9, Joint Pre-Trial Statement, Admissions of Fact Section at 3]. However, at that time, the Debtor moved out of the Lagoon Drive Property and ceased making payments. [*Id.*].

9. After the Debtor stopped making payments on the HELOC, Wells Fargo, the holder and owner of the note and mortgage, notified the Plaintiff that he was still obligated to pay this indebtedness. The Plaintiff does not dispute that the HELOC is a recourse loan. [Id.]. The balance presently owed under the HELOC loan is approximately $93,000.[3] [Id.].

10. Paragraph seven of the Judgment reads as follows:

> As settlement of the Plaintiff's interest in the marital estate, the Defendant [i.e., the Debtor] shall pay to the Plaintiff the sum of $14,000. The Defendant [i.e., the Debtor] is allowed to pay this in monthly increments of $233.34 per month, with the first payment due within thirty (30) days of the date of this judgment.

[Plaintiff Ex. No. 1].

11. After the Judgment was entered, the Debtor made two partial payments to the Plaintiff pursuant to paragraph seven (the $14,000 Obligation). She has made no other payments. The balance owed to the Plaintiff is now $13,800. [Tape Recording, 12/11/12 Trial at 10:05:00–10:06:10 a.m.].

12. As a result of Wells Fargo informing the Plaintiff that it expected him to make the payments under the HELOC, and as a result of the Debtor also not making the monthly payments to satisfy the $14,000 Obligation, the Plaintiff filed a motion in the Divorce Lawsuit seeking an order from the Circuit Court of Baldwin County, Alabama. He sought an order requiring the Debtor to comply with the Judgment and: (a) resume making payments to Wells Fargo under the HELOC; and (b) also

---

[3] The Joint Pre-Trial Statement sets forth that "[t]he HELOC is a recourse loan with a balance owed of at least $81,900." [Adv. Doc. No. 9 at 3]. However, the parties filed this document on August 23, 2012, whereas the Plaintiff on December 11, 2012, testified at trial that the amount owed is approximately $93,000. [Tape Recording, 12/11/12 Trial at 10:15:02-10:16:00 a.m.]. The Court presumes that this $93,000 figure, which the Debtor did not dispute at trial, includes accrued unpaid interest that was not ever considered when the parties submitted the Joint Pre-Trial Statement. The Court reaches this conclusion because the documentation for the HELOC reflects that the principal amount is $81,900. [Plaintiff Ex. No. 5 at 2]. Thus, the additional $11,100 necessarily must be accrued, unpaid interest.

resume making payments to the Debtor pursuant to the $14,000 Obligation (hereinafter, the $14,000 Obligation and the obligation of the Debtor to indemnify and hold harmless the Plaintiff for the balance due under the HELOC will sometimes be collectively referred to as the Obligations).   [Tape Recording, 12/11/12 Trial at 9:54:45–9:55:35 a.m.].

13. In order to stop the Plaintiff from prosecuting this motion in the Divorce Lawsuit, the Debtor, together with her present husband, Robert Victor Nugent, filed a Chapter 7 petition in this Court on October 5, 2011. [Doc. No. 1].

14. On January 12, 2012, in their main Chapter 7 case, the Debtor and her present husband received a discharge. [Main Case Doc. No. 37]. The discharge order does not grant a discharge for any debts which the Debtor owes that constitute "domestic support obligations." [*Id.*].

### III. PROCEDURAL HISTORY OF THE ADVERSARY PROCEEDING

1. On December 27, 2011, the Plaintiff initiated the adversary proceeding pending before this Court by filing his Complaint Objecting to Discharge Under 11 U.S.C. 527(a)(5) (the Complaint). [Adv. Doc. No. 1]. In the Complaint, the Plaintiff seeks a judgment that the following sums owed by the Debtor are *not* dischargeable: (a) the $93,000 owed under the HELOC; (b) the $13,800 owed under the $14,000 Obligation; (c) $1,500 that the Plaintiff paid his attorney in the Divorce Lawsuit to draft and begin prosecuting the motion to enforce paragraphs six and seven of the Judgment; and (d) $5,000 that the Plaintiff paid his counsel in this adversary proceeding to draft and prosecute the Complaint. In total, the

Plaintiff seeks a judgment from this Court that the Debtor owes a non-dischargeable debt to him in the amount of $113,300, plus interest. [*Id.*].

2. On January 26, 2012, the Debtor filed her answer to the Complaint. [Adv. Doc. No. 8]. The Debtor denies that the debts that she owes to the Plaintiff, i.e., the Obligations, constitute "domestic support obligations" and, therefore, requests this Court to issue a judgment that the Obligations are dischargeable. [*Id.*].

3. On August 23, 2012, counsel for the Plaintiff and counsel for the Debtor submitted a Joint Pre-Trial Statement. [Adv. Doc. No. 9.]

4. On December 11, 2012, this Court held a trial in this adversary proceeding. The Court admitted all seven exhibits tendered by the Plaintiff; the Debtor had no objections to any of the exhibits. [Tape Recording, 12/11/12 Trial at 9:51:34–9:52:07 a.m.]. The Court also heard testimony from two witnesses: the Plaintiff and the Debtor, both of whom gave credible testimony. The Court gives equal weight to the testimony given by the Plaintiff and the Debtor.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it is a matter concerning whether a particular obligation owed by the Debtor is dischargeable. Further, this dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because this dispute affects the debtor-creditor relationship. Finally, this dispute is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A]

proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Here, the Complaint initiates a suit that could arise only in a bankruptcy case. Venue is also proper pursuant to 28 U.S.C. § 1409(a).

### B. Constitutional Authority to Enter a Final Order

Having concluded that this Court has jurisdiction over this adversary proceeding, this Court nevertheless notes that *Stern v. Marshall* sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. 131 S. Ct. 2594 (2011). Therefore, this Court has a duty to inquire constantly into its constitutional authority to enter a final order for any matter brought before this Court.

The Court concludes that the facts in the pending suit are distinguishable from those in *Stern*, and that therefore this Court has the authority to enter a final judgment. In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. 131 S. Ct. 2594. Here, the Plaintiff, one of the Debtor's creditors, has filed the Complaint seeking a judgment from this Court declaring that the Obligations are non-dischargeable debts pursuant to § 523(a)(5). [Procedural History No. 1]. This is a cause of action unique to the Code and is therefore based solely on an express provision of the Code. More importantly, the requested relief—that this Court declare the Obligations to

be non-dischargeable [Procedural History No. 1]—is unique to the Code.  Such relief is

not possible to obtain under state law.  As a result, this Court concludes that *Stern* is

inapposite, and this Court is constitutionally authorized to enter a final judgment

regarding the dispute at bar.

**C.      The Applicable Provisions of the Code Governing this Dispute are 11 U.S.C.
          §§ 523(a)(5) and 101(14A)**

Section 523(a)(5) in pertinent part, reads as follows:  "A discharge under 727 . . .

of this title does not discharge an individual debtor from any debt—for a domestic

support obligation."  11 U.S.C. § 523(a)(5).  Thus, the issue at bar is whether each of the

Obligations constitutes a domestic support obligation.

Section 101(14A) defines a "domestic support obligation."  This section reads as

follows:

> The term "domestic support obligation" means a debt that accrues before,
> on, or after the date of the order for relief in a case under this title,
> including interest that accrues on that debt as providing under applicable
> nonbankruptcy law notwithstanding any other provision of this title, that
> is—
>
> (A) owed or recoverable by—
>     (i) a spouse, former spouse, or child of the debtor or such child's
>         parent, legal guardian or responsible relative; or
>     (ii) a governmental unit;
> **(B) in the nature of alimony, maintenance, or support (including
>     assistance providing by a governmental unit) of such spouse, or
>     child of the debtor or such child's parent, without regard to
>     whether such debt is expressly so designated;**
> (C) established or subject to establishment before, on, or after the date of
>     the order for relief in a case under this title, by reason of applicable
>     provisions of—
>     (i) a separation agreement, divorce decree, or property settlement
>         agreement
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable
>         nonbankruptcy law by a governmental unit; and

> (D) not assigned to a nongovernmental entity, unless that obligation is
> assigned voluntarily by the spouse, former spouse, child of the debtor,
> or such child's parent, legal guardian, or responsible relative for the
> purpose of collecting the debt.

11 U.S.C. § 101(14A) (emphasis added).

The emphasized language above is key to determining whether the Obligations constitute domestic support obligations. The Debtor argues that the Obligations do not create alimony, maintenance or support of the Plaintiff (i.e., her ex-spouse).[4] [Tape Recording, 12/11/12 Trial at 10:55:09–10:56:51 a.m.]. The Debtor emphasizes that: (1) the Judgment itself, in paragraph 10, expressly states that "No alimony is awarded"; and (2) the Plaintiff testified that the Obligations do not constitute alimony. [*Id.* at 10:55:00–10:56:00 a.m.]. For his part, the Plaintiff argues that the Obligations *are* in the nature of alimony, maintenance or support because of the phrase at the end of sub-section B of § 101(14A). [*Id.* at 10:44:00–10:45:30 a.m.]. This phrase states that "domestic support obligations" should be defined "without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A) The Plaintiff construes this phrase to mean that simply because the Judgment states that "no alimony is awarded" does not mean that the Obligations are not "alimony" for purposes of determining whether the Obligations are non-dischargeable under § 523(a)(5). [Tape Recording, 12/11/12 Trial at 10:55:09–10:56:51 a.m.]. The Plaintiff also argues that even if the Obligations are not "alimony,"

---

[4] It is undisputed that the Obligations are not in the "nature of alimony, maintenance, or support . . . [of a] child of the debtor or [of] such child's parent." § 101(14A). There were no children of this marriage. [Plaintiff Ex. No. 1] ("3. There were no children born of this marriage and none are expected."). Rather, the dispute is whether the Obligations are alimony, maintenance or support for the Debtor's "former spouse" (i.e., the Plaintiff). *Id.*

Additionally, the other elements required by § 101(14A) to constitute a domestic support obligation are not in dispute. The debt is unquestionably (1) owed to a former spouse; (2) established by reason of applicable provisions of an order of a court of record; and (3) not assignable unless assigned voluntarily by the former spouse. *See id.*

9

they are either "maintenance" or "support." [*Id.*]. Thus, in order to make a ruling in the

dispute at bar, the Court will review the case law construing the meaning of sub-section B

as applied in a § 523(a)(5) lawsuit.[5]

       1.      <u>Fifth Circuit Case Law Governs the Analysis of 11 U.S.C. § 523(a)(5)</u>

       The Fifth Circuit has interpreted this sub-section of 11 U.S.C. § 523 in several

cases, developing a test to determine whether the obligations at issue are dischargeable.

*See, e.g., In re Dennis*, 25 F.3d 274, 278 (5th Cir. 1994). Under this test, the labels given

to an obligation—either by the state court or the parties themselves—are not dispositive.

*Id.* at 277–78. The ultimate characterization under the Code is solely the province of the

---

[5] At trial, counsel for the Debtor noted during his opening presentation that the Plaintiff had not pleaded that the Obligations are non-dischargeable under § 523(a)(15). Counsel for the Plaintiff immediately made an oral motion to amend the Complaint to request that the Obligations be declared non-dischargeable under § 523(a)(15). [Tape Recording, 12/11/12 Trial at 9:59:12–10:02:05 a.m.].

      Section 523(a)(15) reads, in pertinent part, as follows: "A discharge under § 727 . . . of this title does not discharge an individual debtor from any debt—to a . . . former spouse . . . of the debtor and **not of the kind described in paragraph (5)** that is incurred by the debtor in the course of a divorce . . . divorce decree or other order of a court of record . . . ." 11 U.S.C. § 523(a)(15) (emphasis added). Consequently, if both §§ 523 (a)(5) and (a)(15) are pled in a complaint, then it no longer matters how an obligation arising out of a marital relationship is classified; such debts are *never* discharged. *See In re Corn*, No. 07-11951-CAG, 2008 Bankr. LEXIS 4887, * 10–11 (Bankr. W.D. Tex. July 10, 2008) ("[T]he practical effect of how obligations arising out of a marital relationship are classified . . . no longer exists in the § 523(a) context: such debts are not discharged, whether they are domestic support obligations or are other types of obligations arising out of a marriage dissolution, such as property settlement obligations.") (citing *In re Tracy*, No. 06–40044–JDP, 2007 WL 420252, at *2 (Bankr. D. Idaho Feb. 2, 2007); 4 COLLIER ON BANKRUPTCY 523–118, 523–119 (2006)). Conversely, if *only* §§ 523 (a)(5) or (a)(15) is pled, then the classification of the obligation continues to govern dischargeability.

      This Court denied the oral motion of Plaintiff's counsel to amend, and stated its reasons on the record. [Tape Recording, 12/11/12 Trial at 9:59:12–10:02:05 a.m.]. First, a judgment based upon § 523(a)(15) was never pleaded in the Complaint; second, the suit had been on file for approximately one year and no amended complaint requesting relief under § 523(a)(15) was ever filed; third, § 523(a)(15) was never mentioned as a basis for relief in the Joint Pre-Trial Statement; and finally, it would be prejudicial to the Debtor for the Court to now allow the Plaintiff to amend at the beginning of the trial. *See In re DePugh*, 409 B.R. 84, 100 (Bankr. S.D. Tex. 2009) ("[T]he Court should freely give leave to amend where justice so requires. In order to determine whether 'justice so requires,' a court may consider a variety of factors, such as (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility of the amendment. The Fifth Circuit has held that decisions concerning motions to amend are entrusted to the sound discretion of the trial court.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 390 (5th Cir. 2009); *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998))).

      As a result of this Court's denial of the motion to amend, the Obligations *must* arise out of a "domestic support obligation" under § 523(a)(5) to be dischargeable.

bankruptcy court.[6]  *In re Brody*, 3 F.3d at 39.  Thus, to determine whether the Obligations

are non-dischargeable under § 523(a)(5), this Court should consider bankruptcy law—*not*

the state law of Alabama—with the Plaintiff bearing the burden, by a preponderance of

the evidence, to prove the character of the debt at issue.  *See Grogan v. Garner*, 498 U.S.

279, 291 (1991) (preponderance of evidence standard applies to all discharge exceptions

contained in § 523(a)); FED. R. BANKR. P. 4005; *In re Dennis*, 25 F.2d at 277.  As the

party objecting to the discharge of the Obligations, the Plaintiff must therefore present

sufficient evidence that the Obligations are support, maintenance or alimony.

     In the suit at bar, the issue then is:  what is the true nature of the Obligations?  To

determine whether the Obligations are "alimony, maintenance or support," this Court is

bound by the intent of the parties at the time the divorce decree, separation agreement, or

here, the Judgment, was signed.  *See In re Davidson*, 947 F.2d 1294, 1296–97 (5th Cir.

1991); *In re Ginankas*, 917 F.2d 759, 762 (3d Cir. 1990).  Here, however, the situation is

unusual.  The Judgment was not achieved by the parties through settlement, but by the

Alabama court after a full blown trial.  [Finding of Fact No. 4].  Thus, this Court must

consider the intent of the Alabama state court—not the Plaintiff and the Debtor.  If the

Judgment's intent is clear, then this should control the Court's characterization of the

Obligations.  If, however, the Judgment's intent is ambiguous, then this Court may

consider extrinsic evidence, including a non-exclusive list of factors.  *In re Evert*, 342

F.3d 358, 368 (5th Cir. 2003).  These factors, first set out by the Fifth Circuit in *In re*

---

[6] The rationale for this rule is that a state court does not label obligations in a divorce settlement or judgment with the Code provisions and definitions in mind.  *In re Dennis*, 25 F.3d at 278.  For example, under Texas law alimony does not even exist.  *In re Joseph*, 16 F.3d 86, 87 (5th Cir. 1994).  Thus, while a Texas divorce decree is barred from characterizing an obligation as alimony, a debt could be characterized as alimony under the Code.  *Id.*; *In re Nunnally*, 506 F.2d at 1027; *see also In re Jones*, 9 F.3d 878, 880 (10th Cir. 1993) (holding that a debt could be characterized in the bankruptcy court as "alimony" even though the obligation could not legally qualify as alimony under the applicable state law).

*Nunnally*, include: (1) the parties' disparities in earning power at the time of the Judgment; (2) the parties' relative business opportunities at the time of the Judgment; (3) the parties' physical conditions at the time of the Judgment; (4) the parties' educational backgrounds; (5) the parities' expected future financial needs; and (6) the likely benefit to each party had the marriage continued. 506 F.2d 1024, 1027 (5th Cir. 1975).

In *Evert*, the plaintiff produced substantial evidence to the bankruptcy court regarding the parties' assets, backgrounds and prospects at the time of the divorce decree. 342 F.3d at 365–66. The bankruptcy court found that the wife lacked a college degree or vocational training, had not worked outside the home since 1986, and that the couple's income was almost exclusively from the husband's business. *Id.* Under the *Nunnally* factors, the parties therefore had a substantial difference in their earning capacities, business opportunities, need for future support, as well as the benefits that they would have received had the marriage continued. *Id.* Consequently, the bankruptcy court found that the $65,000 promissory note awarded to the wife in the decree—which was payable in monthly installments—was properly characterized under the Code as "support." *Id.*

The Fifth Circuit reversed. *Id.* at 369. It found that the bankruptcy court jumped too quickly to the extrinsic *Nunnally* factors. According to the Fifth Circuit, the decree *itself* provided sufficient evidence of the parties' intent: to equalize the distribution of the marital property through convenient, monthly payments. *Id.* Thus, to characterize the debt, the bankruptcy court should have first considered the language of the decree.[7]

---

[7] The issue before the *Evert* bankruptcy court and the Fifth Circuit was actually a question under § 522(d)(10)(D) and not § 523(a)(5). 342 F.3d at 366 (analyzing the exemption of property from the bankruptcy estate that the debtor "received as alimony, support or separate maintenance" under § 522(d)(10)(D)). However, the bankruptcy court characterized the obligation at issue as "support" under § 522(d)(10)(D) by using and applying the § 523(a)(5) *Nunnally* factors.

On appeal, the Fifth Circuit similarly used *Nunnally* and the § 523(a)(5) analysis to reach its conclusion—although it disagreed with the bankruptcy court's conclusion and therefore reversed that

Despite any extrinsic evidence to the contrary, the decree clearly indicated that the parties did not mean to provide alimony, support or maintenance. *Id.*

For example, in their decree the parties in *Evert* created two distinct sections: (1) "alimony"; and (2) "property division." *Id.* These labels were certainly not dispositive under the Code, *see In re Dennis*, 25 F.3d at 277–78; however, by listing the $65,000 note at issue under the second category, the parties reinforced that their intended designation of this obligation was as a "property division." *In re Evert*, 342 F.3d at 369.

Additionally, the decree did not include several "substantive characteristics" of a domestic support obligation, thereby demonstrating the parties' intent to characterize the $65,000 note as a property settlement. Unlike "alimony, maintenance or support," the payments were not designed to cease at the debtor's death, were not subject to modification upon a subsequent change in circumstances, and were not limited, but could be assigned at will. 342 F.3d at 369; *see also Borton v. Borton*, 162 So. 529 (1935); *Kelley v. State Dep't of Revenue*, 796 So. 2d 1114, 1118 (Ala. Ct. App. 2000) ("In Alabama, periodic alimony payments cease at the death of either spouse."). Without these characteristics, it was very clear to the Fifth Circuit that the obligation in *Evert* was not "domestic support." *Id.* And, because of this clarity, there was no need for the bankruptcy court to apply the *Nunnally* factors.

---

court's ruling. The *Nunnally* factors, the Fifth Circuit agreed, are "binding law within this circuit" for § 523(a)(5) cases, although never immediately where, as was true in *Evert*, the "divorce decree in both form and substance clearly establishes the nature of the obligation and where there are distinct provisions for the [alimony, maintenance and support] and for the property settlement." *Id.* at 370. In these instances, immediate analysis under *Nunnally*, and the extrinsic evidentiary questions that it asks, is premature. The bankruptcy court should *first* consider only the language in the agreed divorce decree itself, regardless of whether § 523(a)(5) *or* § 522(d)(10)(D) is at issue. *See id.*

2.      Interpreting the Form and Language of the Judgment Under *Evert*

Using this analysis in the suit at bar, the Judgment is not as clear as it was in *Evert*. For the reasons set forth below, this Court finds that, standing alone, the Judgment does not conclusively characterize the Obligations as "domestic support obligations" under § 523(a)(5). While several aspects of the Judgment's language and form could point towards an intent to establish a domestic support obligation, too many other aspects could point away from such an intent.

a.      **Aspects of the Judgment's language and form which point towards an intent to establish a "domestic support obligation"**

Certain characteristics of the Judgment weigh towards finding that the Obligations are "domestic support" under § 523(a)(5). First, the Judgment is silent regarding both the Lagoon Drive Property's equity, as well as the amount of any indebtedness. [Plaintiff Ex. No. 1]. There is therefore no clear relationship between the award of the Lagoon Drive Property to the Debtor in paragraph six, and the award of $14,000 to the Plaintiff in paragraph seven. It is unclear if the $14,000 Obligation reflects any logical percentage of the parties' joint liability, title and interest in the marital homestead. Arguably then, the Alabama court could have intended that the $14,000 Obligation merely provide the Plaintiff "support" after the marriage dissolved—independent of any interest he had in the Lagoon Drive Property.

In *In re Corn*, conversely, the bankruptcy court was able to determine that a debt was intended as a property division because the obligation amount reflected one-half of the parties' marital liability. 2008 Bankr. LEXIS 4887, at *12–13. Here, it is simply not clear from the Judgment if the $14,000 Obligation is a just, right, or even logical division of the marital property. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998)

14

("Community property owes its existence to the legal fact of marriage, and when the parties to that compact determine their relationship should end, property acquired during marriage is and should be divided among them in a *just and right* manner.") (emphasis added); *Lovett v. Lovett*, 11 Ala. 763, 767 (Ala. 1847) ("The act authorizing the court of chancery to dissolve the bonds of matrimony, requires the court pronouncing the decree, 'to order and decree a division of the estate of the parties, in such way as to them shall seem *just, and right* . . . .'") (emphasis added).   The Alabama court provided no discussion of how it arrived at this $14,000 figure or if $14,000 is an equitable division of the parties' marital assets and liabilities.   As a result, it is arguable that the $14,000 Obligation is entirely independent of the property division, reflecting instead a domestic support obligation.

The argument in favor of finding that the Obligations are domestic support obligations is bolstered by the monthly payment plan described in paragraph seven. Rather than require that the Debtor give the Plaintiff a clear lump sum payout of $14,000—thereby, buying out the Plaintiff's interest in the Lagoon Drive Property—the Alabama court instead created a payment program of $233.34 per month.   [Plaintiff Ex. No. 1].   Thus, the structure of the $14,000 Obligation seems more like temporary financial support. *Bowsman v. Morrell (In re Bowsman)*, 128 B.R. 485, 487 (Bankr. M.D. Fla. 1991) (finding that payment of a note over time, rather than a lump sum payment, is characteristic of alimony).

Finally, unlike *Evert*, the Judgment does not include express sections entitled "property division" and "alimony."   While these state court labels are not binding upon this Court, *see In re Dennis*, 25 F.2d at 277–78, the Court must nevertheless consider the

15

Alabama court's possible rationale for this choice. *In re Davidson*, 947 F.2d at 1296–97 (stating that courts are bound by the intent of the party that created the divorce decree). Unlike *Evert*, here there is no overt, overarching structure to the Judgment; rather, each provision is listed in a separate untitled paragraph. Without the same kind of clear labeling as in *Evert*, the Alabama court could have arguably intended any and all paragraphs of the Judgment to constitute "domestic support obligations."

These characteristics of the Judgment therefore weigh in favor of finding that the Alabama court intended for the Obligations to constitute domestic support obligations under § 523(a)(5).

> **b.** **Aspects of the Judgment's language and form which point against an intent to establish a "domestic support obligation"**

Yet, several other features of the Judgment weigh against finding that the Obligations constitute property settlements; that, rather than burden the Debtor with a domestic support obligation, the Alabama court intended paragraphs six and seven to simply distribute the marital property. First, the Judgment specifically indicates that "No alimony is awarded." [Plaintiff Ex. No. 1]. This intent seems clear. Additionally, it is arguable that the Alabama court intended this assertion to cover more than mere "alimony"; that by this phrase, the Alabama court intended to reject *all* forms of financial support to the Plaintiff after marriage—including not only alimony, but also maintenance and support.[8]

Second, the Judgment characterizes the Lagoon Drive Property as the "marital home place," indicating that the parties owned the property jointly during the marriage.

---

[8] Colloquially, alimony is interchangeable with "spousal support" or "maintenance." More importantly, the Alabama court likely did not make this statement with the Code and bankruptcy case law definitions for support, alimony and maintenance in mind. *See In re Dennis*, 25 F.2d at 277-78.

[Finding of Fact No. 6]. As the marital home is therefore a joint asset, the HELOC Obligation arguably is "not in the nature of a domestic support obligation, but [was] incurred in the course of the dissolution of the parties' marital relationship." *In re Corn*, 2008 Bankr. LEXIS 4887, at *13.

Third, the term "settlement," used in paragraph seven to describe the $14,000 Obligation to the Plaintiff, seems to indicate the Alabama court's intent to dissolve the Plaintiff's interest in the marital home and to separate the marital property and liabilities between these parties. As paragraph seven states, "*As settlement of the Plaintiff's interest in the marital estate*, the Defendant shall pay to the Plaintiff the sum of $14,000." [Finding of Fact No. 10] (emphasis added). If this paragraph is referring to an award of spousal support, independent of the Lagoon Drive Property's liability and equity, then the term "settlement" seems meaningless.

Further, while counsel for the Plaintiff argued that the monthly payment schedule in paragraph seven (i.e., $233.34 per month) is unusual and illogical unless it reflects a support payment [Tape Recording, 12/11/12 Trial at 10:52:30–10:53:50 a.m.], the Fifth Court has disagreed in at least one case. In *Evert*, a similar monthly schedule was not necessarily indicative of a domestic support payment. Rather, divorced parties—or, if a trial is actually held, the family law court—can choose to spread the division of property "out over time for legitimate reasons, such as convenience . . . ." 342 F.3d at 369.

Finally, the terms of the Judgment lack the "substantive characteristics" of a domestic support obligation. *Id.* The Obligations are not designed to cease at the Debtor's death. *See* [Finding of Fact Nos. 6 & 10]; *see also Borton*, 162 So. 529; *Kelley*, 796 So. 2d at 1118. Nor are the Obligations subject to modification upon *any* subsequent

change in circumstances. *See* [Finding of Fact Nos. 6 & 10]; *see also Evert,* 342 F.3d at 369. Also, unlike "alimony, maintenance or support," the Plaintiff is free to assign his rights at will; there are no limitations on disposition. *See* [Finding of Fact Nos. 6 & 10]; *see also Evert*, 342 F.3d at 369.

These elements of the Judgment therefore weigh against a finding that the Alabama court intended to create domestic support obligations under § 523(a)(5).

In sum, because some factors weigh in favor of the Obligations being "domestic support obligations" under § 523(a)(5), and some factors weigh against, this Court cannot conclude, as the Fifth Circuit did in *Evert*, that the Judgment is crystal clear and that no *Nunnally* analysis should be done. Rather, this Court concludes that the nature of the Obligations imposed by the Judgment is ambiguous for purposes of determining whether the Obligations are non-dischargeable under § 523(a)(5).

3.   Interpreting Extrinsic Evidence Under the *Nunnally* Factors

Accordingly, the Court may consider extrinsic evidence to determine the intent of the parties. Under the *Nunnally* factors, the Court may take into account the Plaintiff and the Debtor's earning power at the time of the Judgment; their relative business opportunities; their physical conditions; their educational backgrounds; their expected future financial needs; and the likely benefit that both the Plaintiff and the Debtor would have received had the marriage continued. 506 F.2d at 1027.

At trial, the Debtor testified that during her marriage to the Plaintiff, she was a real estate sales executive. As the market began to fall in 2007, but prior to the parties' divorce, she used the funds provided under the HELOC for living expenses, a trip to Hawaii, property taxes and insurance on the Lagoon Drive Property, and a Mercedes

Benz. [Tape Recording, 12/11/12 Trial at 10:27:26–10:37:30 a.m.]. The Plaintiff testified, on the other hand, that he received little to no benefit from the funds provided by the HELOC. [*Id.* at 10:38:44–10:39:24 a.m., 10:42:00–10:42:30 a.m.]. Moreover, the Debtor testified that after the parties separated, on the advice of her divorce attorney, the Debtor moved the HELOC funds into a separate bank account, and thereby barred the Plaintiff's access to any remaining funds. [*Id.* at 10:33:00–10:36:00 a.m.].

The problem is that there is no evidence before this Court that the Alabama judge heard the same or similar testimony from the Plaintiff and the Debtor. Thus, it is unclear whether these issues had any bearing on the awards granted by the Alabama court in the Judgment. Nor is it clear to this Court that what these witnesses said relates to any of the factors presented in *Nunnally*. In the suit at bar, the Plaintiff wholly failed to address: (1) his and the Debtor's earning power at the time of the Judgment; (2) their relative business opportunities; (3) their physical conditions; (4) their educational backgrounds; (5) their expected future financial needs; and (6) the likely benefit that both the Debtor and he would have received had the marriage continued. In short, the Plaintiff neglected to present *any* evidence under *any* of the *Nunnally* factors. Consequently, this Court cannot conclude that the Alabama court found that the Plaintiff required support, alimony or maintenance, or that the Alabama court awarded any support, alimony or maintenance to him in the Judgment.

In sum, the Plaintiff has failed to present sufficient evidence either from the language and form of the Judgment, or from extrinsic evidence defined by the *Nunnally* factors, to demonstrate that the Alabama court intended to classify the Obligations as alimony, support or maintenance. The Plaintiff bears the burden in this suit, and he has

failed to meet it. *See Grogan*, 498 U.S. at 291. As a result, this Court cannot conclude that the Obligations are "domestic support obligations" under §§ 523(a)(5) and 101(14A); therefore, the Obligations are not excepted from discharge under § 523(a)(5).

## V. CONCLUSION

What began in Alabama has spread to this Court, as the Plaintiff and the Debtor's acrimonious divorce has spilled out of the Baldwin County courthouse into this one. This prolonged dispute is not uncommon, and as a result, the Code has established two provisions which deal with financial obligations arising out of divorce. When pled together, these two provisions demonstrate a policy against discharging these marital obligations, as collectively §§ 523(a)(5) and 523(a)(15) permit a bankruptcy court to disallow the discharge of essentially any debt arising out of the demise of a marital relationship.

When pled separately, however, a different outcome can arise, one that is contrary to this policy preference. A plaintiff who seeks to prevent discharge of a divorce-related debt by pleading only one of these provisions runs the risk of a bankruptcy court ruling that the debt fits in the category governed by the unpleaded provision. That is what has happened in the suit at bar. The result is that the Debtor—held responsible in Alabama for the Obligations—has been discharged from the Obligations. Conversely, the Plaintiff—held harmless in the same Alabama court for the HELOC debt—will now be saddled with sole liability for the balance owed under the HELOC.

If the Plaintiff has anyone to blame for his misfortune, it is his attorney, for this Court is bound by applicable law regarding proper pleadings and may only rule on the provisions properly before it. Only one of the two relevant Code sections is before this

Court—§ 523(a)(5).   And, under § 523(a)(5), the Plaintiff has not proven by a preponderance of the evidence that the Obligations at issue are "domestic support obligations." Rather, they are more likely characterized as "property divisions," excepted only under the second provision, § 523(a)(15)—which the Plaintiff failed to plead.

In sum, this Court concludes that the Obligations are not excepted from discharge under § 523(a)(5), the provision pled by Plaintiff's counsel.  This Court further concludes that it should deny all of the relief requested by the Plaintiff and that the Obligations are discharged.

A Judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

SIGNED this 20th day of December, 2012.

_____
Jeff Bohm
Chief United States Bankruptcy Judge

21